IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-02061-PAB-KLM

ROBERT STEVEN DYE,

    Plaintiff,

v.

THE COLORADO DEPARTMENT OF CORRECTIONS, on behalf of the State of Colorado as employer of Steve Bade and Warden Kevin Milyard,
STEVE BADE, individually and as employee of the Colorado Department of Corrections,
WARDEN KEVIN MILYARD, individually and as supervisor of Steve Bade;
DARIN POOLE, individually and as a former employee of the Sedgwick County Sheriff's Office and Sedgwick County Sheriff,
SEDGWICK COUNTY SHERIFF RANDY PECK, individually and as Sheriff of Sedgwick County, Colorado,
THE BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, COLORADO as a governmental entity and the Commissioners thereof as the governing entity thereof,
THE TOWN BOARD OF THE TOWN OF JULESBURG as a public entity and as governing members thereof, in their official capacities,

    Defendants.

**ORDER**

This matter is before the Court on the Partial Motion to Dismiss on Behalf of Defendants Poole, Peck, Sedgwick County Commissioners, and Town of Julesburg [Docket No. 14] and the State of Colorado Defendants' Motion to Dismiss Complaint Based [on] Qualified Immunity and for Lack of Subject Matter Jurisdiction [Docket No. 17]. The Court's jurisdiction is based on 28 U.S.C. § 1331.

**I. PROCEDURAL HISTORY**

    This case involves plaintiff Robert Steven Dye's state and federal claims against

defendants arising out of a confrontation between Mr. Dye and defendants Darin Poole, a Sedgwick County Deputy Sheriff, and Steve Bade, a Colorado State Correctional Officer, that occurred on July 4, 2011 in Sedgwick County, Colorado. Following this encounter, Mr. Dye was arrested and charged with resisting arrest, Colo. Rev. Stat. § 18-8-103, obstructing a peace officer, Colo. Rev. Stat. § 18-8-104, and lane usage violation, Colo. Rev. Stat. § 42-4-1007. Docket No. 1-3 at 4, ¶¶ 11, 16; Docket No. 3 at 9-10, ¶ 49; Docket No. 32-3 at 77, ll.12-14. A trial on these charges took place in the Combined Court for the County of Logan, Colorado. Docket No. 17-1. At trial, Mr. Dye testified that he did not obstruct, hinder, or flee from Officers Poole or Bade and that they beat him for several minutes, severely and without provocation. *See, e.g.*, Docket No. 32-3 at 62, l.1-65, l.6; 75, l.22-76, l.1; and 77, ll.8-11. The jury was instructed that

> A person is justified in using physical force upon another person in order to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person. This provision permits a person to defend himself when he reasonably believes that unreasonable or excessive force is being used by law enforcement officers or that its use is imminent.

Docket No. 41-2. On April 25, 2012, the jury convicted Mr. Dye of all three offenses. Docket No. 17-1. Mr. Dye filed an appeal, which was dismissed on October 26, 2012 as untimely. Docket No. 41-1 at 2, ¶ 7.

On July 3, 2012, Mr. Dye filed a complaint against defendants in the District Court for the County of Sedgwick, Colorado, alleging (1) assault on the part of Officer Poole; (2) battery on the part of Officers Poole and Bade; (3) extreme and outrageous conduct on the part of Officers Poole and Bade; (4) tortious violation of Colo. Rev. Stat. § 18-1-707 on the part of Officers Poole and Bade; (5) supervisory liability on the part of

defendants Sedgwick County Sheriff Randy Peck (in his individual and official capacities), Warden Kevin Milyard (in his individual and official capacities), the Sedgwick County Board of County Commissioners ("BOCC"), and the Julesburg Town Board ("Julesburg"); and (6) violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments on the part of all defendants. Docket No. 3 at 5-8, ¶¶ 20-42. Mr. Dye seeks compensatory economic and non-economic damages, exemplary damages, pre- and post-judgment interest, attorney's fees and costs, and the amount of his bond in the state court proceeding. Docket No. 3 at 10, ¶¶ 53-57.

On August 6, 2012, Officers Poole and Peck, BOCC, and Julesburg removed the case to this Court. Docket No. 1. On August 21, 2012, Officers Poole and Peck, BOCC, and Julesburg filed a Fed. R. Civ. P. 12(b)(6) partial motion to dismiss Mr. Dye's claims against Julesburg, his claim for tortious violation of Colo. Rev. Stat. § 18-1-707, and his constitutional claims. Docket No. 14 at 13-14. On August 28, 2012, the Colorado Department of Corrections ("CDOC"), Officer Bade, and Mr. Milyard (collectively, "the State defendants") filed a Fed. R. Civ. P. 12(b)(1) motion to dismiss Mr. Dye's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Docket No. 17.

## II. STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint.[1] Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he

---

[1] Mr. Dye argues that, because this case was filed in state court and removed to this Court, "either state court standards of pleading should apply, or Plaintiff should be

3

moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F .3d 1001, 1013 (10th Cir. 2004)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent the defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id*. Ultimately, and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim. Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194,

---

allowed to amend his complaint." Docket No. 32 at 2. Mr. Dye does not offer any support for this proposition. Even if the Court were sitting in diversity, which it is not, the Federal Rules of Civil Procedure would still apply. *See Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965). Moreover, Mr. Dye has not moved to amend his complaint.

1201 (10th Cir. 2003) (citations omitted).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).  At the same time, however, a court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

"[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."  *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999); FED. R. CIV. P.

12(d). However, a court may properly consider facts subject to judicial notice, state court pleadings, and matters of public record without converting a motion to dismiss into a motion for summary judgment. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). In addition, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff"s claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215.

## III. FACTUAL ALLEGATIONS

Mr. Dye alleges the following.[2] Mr. Dye is a resident of the Town of Julesburg in Sedgwick County, Colorado. Docket No. 3 at 3, ¶ 1. Officer Poole was, at all relevant times, a Sedgwick County Deputy Sheriff and a certified peace officer pursuant to Colo. Rev. Stat. § 30-10-501.6. Docket No. 3 at 3, ¶ 2. Officer Peck was, at all relevant times, the Sedgwick County Sheriff. Docket No. 3 at 3, ¶ 3. The BOCC is the governing board of Sedgwick County. Docket No. 3 at 3, ¶ 4. Julesburg is a town in Sedgwick County. Docket No. 3 at 3, ¶ 5. Officer Bade was, at all relevant times, an employee of the Sterling Correctional Facility run by the CDOC. Docket No. 3 at 3, ¶ 6.

---

[2] Since defendants' Rule 12(b)(1) motions attack the factual basis for jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance*, 126 F.3d at 1275. In addition to the complaint, the Court has considered Mr. Dye's affidavit attached to his responses to defendants' motions to dismiss, Docket Nos. 32-1 and 33-1; excerpts of the transcript from Mr. Dye's state court trial attached to his responses, Docket Nos. 32-3 and 33-3; a copy of the jury's verdict in Mr. Dye's state court trial, Docket No. 17-1; an excerpt from the jury instructions in Mr. Dye's state court trial, Docket No. 41-2; and the denial of Mr. Dye's state court appeal. Docket No. 41-1. These documents are either matters of public record, *see Pace*, 519 F.3d at 1072, or central to the complaint and of undisputed authenticity. *See Alvarado*, 493 F.3d at 1215. Thus, it was proper to consider these documents without converting the motions to dismiss into motions for summary judgment.

Officer Milyard was, at all relevant times, the warden of the Sterling Correctional Facility. Docket No. 3 at 3, ¶ 7. CDOC is a governmental agency of the State of Colorado. Docket No. 3 at 4, ¶ 8.

On or about July 4, 2011, at 5:10 p.m., Mr. Dye was driving from Julesburg to DePorter's Lake via Highway 385. Docket No. 3 at 4, ¶ 11. Officer Poole drove past him in the opposite direction in a marked Sedgwick County Sheriff's vehicle. Docket No. 3 at 4, ¶¶ 12-13. A few minutes later, Officer Poole, in uniform, stopped Mr. Dye. Docket No. 3 at 4, ¶ 13. During this encounter, Officer Poole was verbally and physically abusive toward Mr. Dye. Docket No. 3 at 4, ¶ 16. Officer Poole

> knocked Mr. Dye to the ground by striking him in the back; knocked him down; jerked him around; twisted his arm; repeatedly elbowed him in the teeth and face; broke his glasses; elbowed him in the abdomen; grabbed his right hand, jerked it and hit him in the right arm with a handcuff; landed on top of him; ground his head, arms and legs into the gravel on or near the roadway; beat him in the back; placed the weight of his body on Mr. Dye's shoulders, neck, back, legs and injured ankle; [and] pounded on Mr. Dye's body from the back with his fist . . . .

Docket No. 3 at 4-5, ¶ 17. Officer Peck did not subsequently discipline or fire Officer Poole for his actions towards Mr. Dye. Docket No. 3 at 7, ¶ 35.

At the time Officer Poole began beating Mr. Dye, Officer Bade arrived, wearing a T-shirt bearing the name of the correctional facility where he was employed. Docket No. 1 at 5, ¶ 18. Officer Bade "punched Mr. Dye in the left side and, as Mr. Dye started to fall, kicked Mr. Dye in the testicles from behind, causing excruciating pain and serious permanent damage." Docket No. 3 at 5, ¶ 18. CDOC "specifically taught [Officer Bade] and/or approved the kicking maneuver which injured Steve Dye in the groin." Docket No. 3 at 7, ¶ 36. CDOC and Officer Milyard "have rules and regulations

allowing and/or encouraging their employees to participate in encounters" such as this. Docket No. 3 at 7, ¶ 37.

Immediately following this encounter, Mr. Dye was taken to the hospital. Docket No. 32-3 at 89, ll.11-13. That evening, after Mr. Dye's medical examination, Officer Peck handcuffed him and led him out of the hospital in front of a "crowd of spectators" watching a fireworks display, acting "like [Mr. Dye] was the most dangerous man in the world," which made Mr. Dye feel humiliated in front of his friends and family. Docket No. 3 at 9-10, ¶ 49.

As a result of the actions of Officers Poole and Bade, Mr. Dye suffered "serious bodily injury causing pain, suffering, bleeding, scrapes, bruises, internal injuries, broken teeth, and dental work damage, some of which is on-going." Docket No. 3 at 5, ¶ 17. He also suffered "fright, terror, fear for his life, anguish, shock, [and] emotional trauma now manifesting itself as post-traumatic stress disorder." Docket No. 3 at 5, ¶ 19. He has continuing health problems, including headaches, hearing problems, vision problems, toothaches, jaw pain, neck pain, back pain, and arthritis in his right ankle, and has continuing emotional problems, including panic attacks, fear of law enforcement officers and public officials, inability to breathe, nightmares, inability to eat, and fear of going out in public. Docket No. 3 at 8-9, ¶ 43. Mr. Dye also suffered damage to his glasses, his family car, and certain personal papers that were in the car. Docket No. 3 at 8, ¶ 43.

## IV.  DISCUSSION

### A.  Federal Claims

Mr. Dye asserts that defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  Docket No. 3 at 8, ¶ 41.

Section 1983 of Title 42 creates a private right of action against state and local government officials who deprive individuals of their federal constitutional rights.  It provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable" to the injured party in law or in equity.  42 U.S.C. § 1983.

Under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), a plaintiff may not maintain a § 1983 claim for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff can show that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. at 486-87.  However, if the plaintiff's claim, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed."  *Id*. at 487 (emphasis in original).

#### *1. Fourth Amendment*

Mr. Dye alleges that defendants violated his Fourth Amendment right to be free

from unreasonable seizures by using excessive force in arresting him. Docket No. 3 at 8, ¶ 41.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." The use of excessive force by law enforcement constitutes an unreasonable seizure in violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment"). Determining whether the force used in a particular instance is "reasonable" requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," rendering it an inherently fact-bound inquiry. *Id*. at 396 (internal citations omitted). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. It is, however, an objective standard. *Id*. at 397.

In Colorado, a person is guilty of resisting arrest

> if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:
> (a) [u]sing or threatening to use physical force or violence against the peace officer or another; or
> (b) [u]sing any other means which creates a substantial risk of causing bodily injury to the peace officer or another.

Colo. Rev. Stat. § 18-8-103(1). A person is guilty of obstructing a peace officer "when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law

or the preservation of the peace by a peace officer, acting under color of his or her official authority." Colo. Rev. Stat. § 18-8-104(1)(a). "[S]elf-defense is an available defense" against both charges "when a defendant reasonably believes that unreasonable or excessive force is being used by the peace officer." *People v. Barrus*, 232 P.3d 264, 269 (Colo. App. 2009); Colo. Rev. Stat. § 18-8-103(2) ("It is no defense to a prosecution under this section that the peace officer was attempting to make an arrest which in fact was unlawful, if . . . in attempting to make the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense."); *People v. Fuller*, 781 P.2d 647, 650 (Colo. 1989) ("self-defense is permissible when unreasonable or excessive force accompanies either lawful or unlawful arrests").

The Tenth Circuit has held that *Heck* bars § 1983 claims substantively and procedurally similar to Mr. Dye's. For example, in *Adams v. Dyer*, 223 F. App'x 757, 761 (10th Cir. 2007), the Tenth Circuit held that *Heck* barred Mr. Adams' excessive force claim because he had been convicted in Colorado state court of resisting arrest and second degree assault on two police officers. The Tenth Circuit explained that excessive force is an affirmative defense to the two crimes of which Mr. Adams was convicted, that he "presented this defense to the jury, [that] the jury received instructions to this effect," and that the jury nonetheless convicted him. *Id*. Mr. Adams' excessive force claim stated that the two officers had entered his bedroom and begun assaulting him without announcing themselves or ordering him to do anything. *Id*. The Tenth Circuit found that this claim "squarely call[ed] into question the legitimacy of Adams' Colorado convictions" because, to find in his favor, "the district court would

have been required to nullify the jury's rejection" of his excessive force defense. *Id*.; *see also Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005) (*Heck* barred plaintiff's excessive force claim where he had been convicted of assaulting a police officer in state court and the events giving rise to both the conviction and the civil claim were "inextricably intertwined").

In contrast, in *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999), the Tenth Circuit held that *Heck* did not bar an excessive force claim because Mr. Martinez' conviction for resisting arrest was not predicated on a rejection of his argument that officers used excessive force in arresting him. In that case, Mr. Martinez had fled from police in his car, pulled into a nearby dirt lot, locked the car doors, and rolled down the windows. *Id*. at 1124. When one of the officers reached inside the car to unlock the door, Mr. Martinez rolled the window up, trapping the officer's arm. *Id*. The officers proceeded to arrest him. *Id*. Mr. Martinez' Fourth Amendment claim was based on allegations that the officers used excessive force in effecting his arrest. *Id*.

The Tenth Circuit found that the state court's conviction was based on Mr. Martinez' initial flight from the officers and that, while such conduct would justify the use of reasonable force to effect his arrest, it would "not authorize the officers to employ excessive or unreasonable force in violation of Martinez' Fourth Amendment rights." *Id*. at 1126-27. In determining the basis for Mr. Martinez' conviction, the Tenth Circuit relied on the state court judge's opinion, stating that the case was "broken up in two parts," Mr. Martinez' flight and his arrest, and that "whether the officers overreacted or not is really not my concern . . . . The part of the case that I must look at is whether Mr.

Martinez intentionally resisted the officers in placing him under arrest." *Id*. at 1126.

The Tenth Circuit further found that, even if Mr. Martinez' conviction had been based on "the fact that he resisted a lawful arrest by failing to heed the arresting officers' instructions and closing his vehicle's window on the arm of the arresting officers," such resistance was "a question separate and distinct from whether the police officers exercised excessive or unreasonable force in effectuating his arrest." *Id*. at 1126-27. The Tenth Circuit concluded that, because "a jury could find that the police officers effectuated a lawful arrest of Martinez in an unlawful manner," a finding for Mr. Martinez on his Fourth Amendment claim would not necessarily negate an element of his state court conviction. *Id*. at 1127.

Here, the State defendants argue that Mr. Dye's excessive force claim is barred by *Heck* because, "to find in favor of Plaintiff, this court would be required to nullify the jury's rejection of the 'excessive force' defense." Docket No. 41 at 6. Mr. Dye argues that *Heck* does not bar his Fourth Amendment claim because he is challenging the forceful manner in which he was arrested and not the lawfulness of his arrest, and thus his claim would not necessarily render his conviction invalid.[3] Docket No. 33 at 9-10.

The logic of *Adams v. Dyer* applies here. *See* 223 F. App'x 757. The use of excessive or unreasonable force is an affirmative defense to the charges of resisting

---

[3] Mr. Dye also makes a number of arguments regarding the applicability of the preclusion doctrines, Docket No. 33 at 9-13, but, since the *Heck* doctrine is not a species of either collateral estoppel or res judicata, these are inapplicable. *Heck*, 512 U.S. at 487 n.6 ("Regardless of the state law concerning res judicata, . . . the § 1983 action will not lie."). Moreover, Mr. Dye's argument that defendants may not raise *Heck* on a motion to dismiss is incorrect. *See, e.g.*, *Fottler v. United States*, 73 F.3d 1064 (10th Cir. 1996) (affirming district court's dismissal of § 1983 claim as barred by *Heck*).

arrest and obstructing a peace officer. *See Barrus*, 232 P.3d at 269; *Fuller*, 781 P.2d at 650. In his state court trial, Mr. Dye raised this defense, arguing that he did not resist, obstruct, or flee from the officers and that their use of force was disproportionate to any threat he might have posed. *See, e.g.*, Docket No. 32-3 at 63, ll.13-20 ("Q: Were you trying to prevent them from handcuffing you? A: No, I wasn't. I was just scared. And I said, 'Hey, I'm not a bad guy. Just leave me alone. Hey, don't hurt me, don't hurt me, don't hurt me. I'm not a bad guy.' And they just kept beating on me and beating on me and beating on me and beating on me and beating on me."). The jury was instructed that the use of unreasonable force gives rise to a right to self defense and precludes culpability for resisting arrest or obstructing an officer. *See* Docket No. 41-2. In convicting Mr. Dye, the jury necessarily rejected his argument that the officers used excessive or unreasonable force against him. *See Adams*, 233 F. App'x at 761. Furthermore, Mr. Dye's Fourth Amendment claim in this Court is indistinguishable from his defense in state court, which was that he was not resisting the officers and their actions towards him were unprovoked and unreasonable. *See, e.g.*, Docket No. 32-1 at 2-3, ¶ 7 ("I was not trying to resist arrest. . . . I was not running away. . . . There is no way that I could have hindered him or resisted him. If he had any fear of me on that day, it was plainly unreasonable.").

Moreover, this case is distinguishable from *Martinez*. *See* 184 F.3d at 1123. Mr. Dye's conviction was not based on a separable series of events that occurred before the officers allegedly used excessive force. *See id*. at 1126-27. There is no indication here, as there was in *Martinez*, that the jury's verdict could "coexist" with Mr. Dye's

excessive force claim.  *See id*. at 1127.  Instead, the facts giving rise to both Mr. Dye's conviction and his § 1983 claim are "inextricably intertwined."  *See Cummings*, 418 F.3d at 682-83.

Since the Court cannot find in favor of Mr. Dye without invalidating the jury's verdict that he was resisting arrest and was not subject to unreasonable force, the Court lacks subject matter jurisdiction over this claim.

### 2. Fifth Amendment

Mr. Dye appears to argue that his Fifth Amendment right to due process was violated because he was tried and convicted for resisting an arrest that he argues was illegal.  Docket No. 3 at 8, ¶ 41; Docket No. 32 at 24 ("since Officer Poole had no basis for an arrest, he violated Mr. Dye's due process rights as a separate claim for recovery.").  The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. AMEND. V.  However, the Fifth Amendment binds only federal, and not state or local, actors.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *see also Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997) ("courts have agreed that the Fifth Amendment protects against actions by the federal government").  As there are no federal defendants in this case, Mr. Dye fails to state a claim under the Fifth Amendment.

### 3. Eighth Amendment

Plaintiff alleges that defendants violated his rights under the Eighth Amendment. Docket No. 3 at 8, ¶ 41. The Eighth Amendment "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). Thus, its prohibition on cruel and unusual punishment does not apply "until after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Mr. Dye does not allege any facts in his complaint pertaining to his post-conviction treatment. *See generally*, Docket No. 3. Accordingly, Mr. Dye fails to state a claim under the Eighth Amendment.[4]

### 4. Fourteenth Amendment

Mr. Dye appears to allege that his Fourteenth Amendment right to substantive due process was infringed through the use of excessive force. Docket No. 3 at 8, ¶ 41; Docket No. 32 at 23-24. In addition, he alleges that his right to procedural due process was violated because he was tried and convicted for resisting an arrest that he argues was illegal. Docket No. 32 at 24-25.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." CONST. AMEND. XIV, § 1. This provision protects against both the "denial of fundamental procedural fairness" and against government action that is so egregious as to "shock the conscience." *County of*

---

[4] Mr. Dye asserts that "numerous cases" apply the Eighth Amendment prior to conviction but does not cite these cases or offer a factual basis for asserting a pre-conviction Eighth Amendment claim. Instead, he states that he "plans to amend his complaint with regard to his claims, if any, under the 8th Amendment." Docket No. 32 at 24. Mr. Dye has not, however, moved to amend his complaint.

*Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).

To the extent that Mr. Dye's Fourteenth Amendment claim is based on the use of excessive force, it is barred by *Heck* for the same reasons as his Fourth Amendment claim. *See* Adams, 223 F. App'x 757. Furthermore, Mr. Dye's argument that "since there is no basis for an arrest for a traffic infraction, Mr. Dye could not have been resisting arrest" is logically flawed. *See* Docket No. 32 at 25. Under Colorado law, "[i]t is no defense to a prosecution [for resisting arrest] that the peace officer was attempting to make an arrest which in fact was unlawful," so long as the officer does not use unreasonable force in effecting the arrest. Colo. Rev. Stat. § 18-8-103(2). Thus, the underlying reason for Mr. Dye's arrest is not relevant to the jury's verdict. Moreover, Mr. Dye does not allege any procedural faults in his state court proceedings, such as lack of notice or any limitation of his opportunity to be heard. *See Mullane v. C. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (due process requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing"). Finally, as this argument would necessarily invalidate Mr. Dye's state court conviction, it is also barred by *Heck*. *See* 512 U.S. 477.

Accordingly, Mr. Dye fails to state a claim under the Fourteenth Amendment.

### B. State Law Claims

Mr. Dye asserts a number of state law claims against defendants, including assault, battery, extreme and outrageous conduct, and negligence per se. Docket No. 3 at 5-8, ¶¶ 20-39. Having determined that Mr. Dye's federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over his state law claims. *See*

28 U.S.C. § 1367(c)(3); *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) ("pendent jurisdiction over state claims is exercised on a discretionary basis and . . . if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (internal citations and alterations omitted).

### C.  Attorney's Fees

The non-state defendants request an award of attorney's fees in connection with Mr. Dye's federal claims.  Docket No. 14 at 14.  They argue that such an award is warranted under 42 U.S.C. § 1988 because those claims were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (internal citations omitted).  However, the non-state defendants have not filed a motion for attorney fees or otherwise complied with the requirements of D.C.COLO.LCivR 54.3.  Thus, this request is denied.

### V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Partial Motion to Dismiss on Behalf of Defendants Poole, Peck, Sedgwick County Commissioners, and Town of Julesburg [Docket No. 14] is GRANTED in part and DENIED in part.  It is denied with respect to the request for attorney's fees.  It is granted in all other respects.  It is further

**ORDERED** that the State of Colorado Defendants' Motion to Dismiss Complaint Based [on] Qualified Immunity and for Lack of Subject Matter Jurisdiction [Docket No. 17] is GRANTED.  It is further

**ORDERED** that this case is DISMISSED.

DATED March 26, 2013.

          BY THE COURT:

          s/Philip A. Brimmer
          PHILIP A. BRIMMER
          United States District Judge